May it please the court, Christopher W. Katzabock, appearing for Mr. Simonelli. I'd like to reserve five minutes of time for rebuttal. All right, counsel, watch your time. I will do that, Your Honor. All right. So let me pour into it. Let me start with the jury instructions. The jury instructions here imposed on Mr. Simonelli a duty to prove that force, which they claim never was used, was excessive. So this put the jury in the position of essentially saying, well, if we believe that the deputy grabbed or struck Mr. Simonelli, that the court's already said that's not enough, that that sort of a force the court has already said we have to go on and decide if that was excessive. The problem is that under the law, if the force was unnecessary, then it was excessive as a matter of law. But the jury was put in a position of saying how much force can a deputy – But your argument is that the district court erred by instructing the jury that your client had to prove any use of force by Deputy Roberts was unreasonable, right? I think that, yes. Because Deputy Roberts denied using force at all. So are you aware of any cases that support the argument that a plaintiff's burden to prove all of the elements of the claim can be lessened or excused by the defense theory raised at trial? That seems to me what you're doing. No, I don't think so. I think, Your Honor, our position is that under the law, if force is unnecessary, it is excessive. In other words, for example, or put simply, police officers have no exception. There's no exception that says police officers can grab or hit somebody in a circumstance where a citizen cannot unless they're engaged in a law enforcement function where the issue of excessive force comes in. Where they say, we didn't see a need to use any force, we didn't use any force at all, they basically said, no, there was no need for use of force under these circumstances. Well, counsel, even if we agree with you, why wasn't any error harmless in view of the jury's finding that there was no force used? Because that instruction has to be read, that jury verdict has to be read in terms of the instruction that were given. And the evidence. And the evidence, of course. But to say that the verdict form amended the instructions in some fashion doesn't necessarily cure a problem there. It simply compounds it. In other words, if you look at the jury form, that was the only box you could check if you found no liability. And presumably the jury, in following the instructions, would have found no liability under the instructions given, which were a requirement to show a use of excessive force in circumstances where the government said no force was necessary. But they heard the testimony where the deputy said no force was used. They heard your client's testimony where he said force was used. So they had the option of believing that excessive force or force was used when no force was required or no force was used. So in order for them to find the deputy liable, they would have had to find that some force was used. Because in order for the force to be excessive, there has to be some force. But they could also find the deputy not liable for using force that for some reason they thought was not excessive. In other words, we proposed instructions consistent with the facts of the case. But the verdict is consistent with the deputy's testimony that he used no force. But it's not consistent with the instructions which allowed the jury to find for the county and for the deputy, even if he used force, even if they believed my client. My client had the additional burden of proving that the force used was excessive. So, for example, if the jury would decide, well, you know, a little push, a little punch, that's not excessive. No injury, no harm, no foul. That would have allowed a jury to find that. Then there was a jury to rule in the county's favor under those facts. And it's that confusion and that misleading and that misstatement of the law that creates the problem here. And that's interesting. I just don't think anyone would have been confused. I think they heard what both people said. And if they thought that the deputy was heavy-handed or touched your client in a way that shouldn't have been touched, he would have won. Well, I think, Your Honor, that that is not a correct way in which the jury was instructed. If the jury had been instructed in that way, like we asked them to be instructed, we asked them to be instructed since they're not claiming to have any claim of right to do this. We asked the jury to be instructed that we would prevail if the touching occurred and that they would prevail if the no touching occurred. But the court rejected that instruction and insisted on giving the excessive force. Well, the elements of the offense, the standard jury instructions, correct? To a degree. But the standard jury instructions seem to assume that a force was used and is being justified, not that a dispute over whether force was used at all. Counsel, do you have a case that has given the instruction that you requested the court to give in this case? No, Your Honor, but we do have cited cases where the use of any sort of touching was considered unnecessary. But that same concept could be encapsulated in the instruction that the court gave, unless you have a case that says in a circumstance where there is an excessive force or a force type of allegation that your particular wording has to be given. Because the court doesn't have to give any particular wording as long as the jury is properly instructed regarding the theories of the case. So that's why I'm curious. Do you have a case that has incorporated the instruction that you were urging upon the court in this case? Not exactly, Your Honor. But I would say that the standard instruction on battery and assault under the California claims does not have the police officer exception that the court instructed the jury on. That those standard instructions involve only an offensive or unconsented to touching. And that those instructions, but the court modified those instructions as well to include the notion of excessive or unreasonable force so that that concept was included not only in the 1983 instructions, but also in the state law battery claims. So to the extent the court is asking do I have a case that says unconsented to touching is a violation of California law, the answer is yes. And that was reflected in the standard jury instructions that were not given, but rather where there is no police officer exception to an unconsented to touching except in the case where the officers are claiming the need to have used force for a law enforcement purpose, which is not this case. Is there a separate crime in California battery by a police officer? There's a separate set of instructions for that. Right. And those were the instructions which the court modified to try to deal with this, to do that. But our position was that since they were saying that there was no touching at all, that those instructions which were designed to deal with the touchings, a use of force situation, were inapplicable. Well, but if the jury had believed your client, then they would have determined that there was touching, and then those instructions would have been warranted. Correct? No, Your Honor. If they're not offering any law enforcement justification for it, then there's no issue of law enforcement reasonable force. In other words, police officers don't get to use force as an exception to that. They only get to use force for law enforcement purposes. And if there are no law enforcement purposes involved, then they don't get to use force at all. And I think that was the point that we were trying to make under both claims. Let's just assume if a reasonable way to look at the verdict is that they did not believe your client and they believed the officer, under what theory could your client have recovered? If they disbelieve my client and believe the officer, then obviously my client doesn't recover. The problem is that the additional burden that the instructions imposed in reaching that conclusion on my client to prove not just the touching occurred or didn't occur, but the additional fact that the touching was unreasonable. It was that additional fact that increased our burden, and it created a problem. So you also, I think we've discussed this, and we understand your perspective. Why was it important for the jury to know about Mr. Simonelli's specific disabilities when they were considering whether Deputy Roberts used excessive force against him? Because I think his disabilities were partly a motivation for his lawsuit, partly a motivation for why he was suing, partly a motivation for why he was doing it, and partly a motivation to show that even assuming that they were arguing some law enforcement purpose, he posed no possible threat to Mr. Roberts and no possible reason to use any force at all. It was also important to show that this was not a case of a greedy plaintiff, but a guy who suffered from disabilities his whole life, and why he takes that issue extremely seriously because of his vision and other imbalance issues, why this is something that's very serious to him, that he could be seriously hurt if he got even slightly pushed and fall over. He could be quite badly hurt. Well, all right. Are his disabilities obvious looking at him? Yes and no. They are obvious in the sense that his gait is funny. If he reads, he would hold something. You know, reading, he would do something like this. He would hold something literally right inches from his face. Is there case law, though, that says if you're particularly sensitive because of your disabilities about anything that people do to you, does that change the elements of the offense here? No, but it does affect the witness's credibility and why they're suing. Is there somebody one of the issues here? But, okay, but really anyone can sue, and what their state of mind is as to why they sue, how does that weigh into the evidence calculation of whether they've – if you bring a lawsuit, you have to meet the burden to prove the elements of that lawsuit. So why would why you sue have anything to do with that? Because it goes to the witness's credibility. I mean, it's hard to avoid issues in any of these cases where, you know, where there's no physical injury that somebody's just bringing a sports suit and it's not really a serious lawsuit. And so explaining his disabilities went directly to that issue and why he felt the need to do that. I am down past my time. There are evidentiary issues we've done in our brief. I'd be happy to answer questions on those as well, but I would like to reserve whatever time if the court has no questions for me. Of course. Good morning, and may it please the Court. Good morning. Deputy County Counsel William Witt for Deputy Andre Roberts in the County of Monterey. Could you speak up a little, counsel, please? Yes, Your Honor, I'm sorry. Thank you. No problem. With regard to the jury instructions, since that's where Mr. Simonelli's counsel started, of course it's an obvious point, but I would like to remind the Court that unless the jury instructions do not accurately state the law, the standard of review is abuse of discretion. Here what Mr. Simonelli appears to be complaining of is that the jury instructions, as crafted by the court with a great deal of give and take between the parties in the court, don't accurately capture the unusual circumstances of this case, in that it wasn't an arrest and it wasn't an investigatory stop, which are the standard use of force scenarios. The jury instructions do accurately state the law, so I think it has to be analyzed under the abuse of discretion standard. Well, I think his position is it's not an excessive force situation because there was no occasion to use any force. So he wanted an instruction that would ask the jury to determine whether or not any force that was used was unconsented to and therefore violative of his plaintiff's rights. I agree that that's his point, Your Honor. What's wrong with that? Well, as the court pointed out, there's no case holding that the jury instructions may be modified. Perhaps they can, but they don't have to be, depending on the version of the case that the defense presents. Here, Deputy Roberts absolutely, at his deposition, when I interviewed him long before his deposition, and at trial, when he was called to the stand twice, testified that he never made any physical contact with Mr. Simonelli. But that doesn't alter the required jury instructions. The jury instructions were correct statements of the law and they were modified to take out the language that have to do with, for instance, arrests or investigatory stops. There are instances, in theory, when a law enforcement officer is entitled to use some degree of force, even if it's not an arrest or an investigatory stop. Two obvious examples are crowd control and maintaining order in a courtroom. In this instance, it was not necessary for Deputy Roberts to use force, but that doesn't mean that no force would ever be necessary under those circumstances. The jury exhibited no confusion whatsoever over the jury instructions. They did not submit any questions to the court. They deliberated for slightly over four hours with an off-site lunch break in between. It appears that they were not stymied by the jury instructions at all. What is your response to opposing counsel's observation that the jury's verdict was inconsistent with the instructions? Well, the verdict form, to which Mr. Simonelli did not object, made it very clear it walked the jury through the process as a threshold question to anything they had to decide. The first question was, did Deputy Roberts intentionally make physical contact with Antonio Simonelli? And the answer was no. With regard to assault, it was the same analysis. Did Deputy Roberts intentionally put Mr. Simonelli in fear of an imminent unwanted touching? I'm probably paraphrasing, but that's the gist of it. The jury said no. I don't think the jury instructions were erroneous in any respect and certainly within the court's discretion to issue, but I think if there was any ambiguity that the verdict form cured that. What about the evidentiary ruling regarding evidence of the plaintiff's disabilities? Well, as the court determined on summary judgment, there was not a shred of evidence of disability discrimination in this case. Mr. Simonelli himself, at his deposition and in, I believe, in the complaint itself at the beginning of the case, conceded that his disabilities would be very apparent to anybody. In addition, Mr. Simonelli's counsel questioned both Deputy Roberts and, I believe, two other witnesses about things like Mr. Simonelli's unsteady gait, trying to elicit through the back door testimony that Mr. Simonelli had some sort of disability. In addition, Deputy Roberts testified that he did not feel physically threatened by Mr. Simonelli. So the only reason, there are only two reasons that Mr. Simonelli was attempting to introduce evidence of his disability. The first was to elicit sympathy from the jury, which is improper considering that was not at issue in this case. And the second possibility, as his counsel just stated, was to show that he's not just a greedy plaintiff, which I find an interesting argument because Mr. Simonelli demanded millions of dollars in a case in which he had no special damages and didn't talk about his general damages. Under the pretrial rulings, Mr. Simonelli's father was allowed to testify not about April 8, 2016, because he wasn't present, but about the effects of this incident on his son in terms of whatever emotional impact it might have had, which goes directly to the claimed reason that Mr. Simonelli wanted to testify about his disability. Mr. Simonelli's father wasn't called. Mr. Simonelli himself talked very, very little about the effects of the alleged incident on him after the fact. Mr. Simonelli could have called friends to testify about how damaging this incident was to him had it actually occurred, and he could have called... He was seeing two psychiatrists at the time. He could have called either of them. He opted not to. So I find it... You know, I don't want to question anybody's motives, but I find it a little troubling that he wants to bring in evidence... wanted to bring in evidence of his disability to show that he wasn't just a greedy plaintiff. Plaintiff, or appellant in this case in his briefings, makes a great deal of emphasis on the eggshell plaintiff rule, but that's a rule of damages. It's not a rule of liability or evidence. So given that Deputy Roberts' previous experience with Mr. Simonelli and the fact that Mr. Simonelli had already initiated litigation against Deputy Roberts in September of 2016, why was it appropriate for Deputy Roberts to confront Mr. Simonelli in October of 2016 about something as innocuous about trying to have a conversation with a court reporter? Well, first of all, Deputy Roberts disputes Mr. Simonelli's version of events. The summary judgment ruling was based on accepting Mr. Simonelli's version of events as true for purposes of that motion, but Deputy Roberts has a very clear recollection of that event, as do other court staff and... And the judge. And the judge, and of course that's what I get when I refer to a trial within a trial in my briefing. That's because we would have to have another trial within a trial about the events of October 21, 2016, if any of that evidence were to come in, because it's directly disputed. The Court determined that even if it had occurred as alleged by Mr. Simonelli, it wasn't a violation of Mr. Simonelli's rights. The Court didn't have to reach this issue, but Mr. Simonelli would have also been entitled to qualified immunity. I'm sorry, Deputy Roberts would have also been entitled to qualified immunity because there's no similar case out there. But as far as the relevance of the events of October 21, I don't see that they tend to prove a material or important element that Mr. Simonelli had to prove at his trial. I don't believe they show motive, intent, course of conduct, modus operandi as alleged by Mr. Simonelli. Deputy Roberts, aside from denying what was alleged to have happened, just didn't do anything that would affect the jury's analysis of what happened on April 8th. It's important to understand that Mr. Simonelli and Deputy Roberts appeared in Judge Matcham's courtroom at least three to five times before the April 8th incident, at least two times between April 8th and October 21st, 2016, that Mr. Simonelli can recall. Mr. Simonelli testified at his deposition he appeared four times. I'm not sure I understand your argument on that point. If the claim at trial is whether or not Roberts touched with force and removed Simonelli from the courtroom on August 8th, why wouldn't putting his hand on Simonelli in October on the 21st and prohibiting him from interfacing with the court reporter evidence knowledge of the prior act where Simonelli had quote-unquote gotten out of control? Because, first of all, as I said, there were at least two court appearances in the interim when Mr. Simonelli and Deputy Roberts had no adverse interactions whatsoever. In fact, according to Mr. Simonelli at his deposition, they barely made eye contact. They didn't have any interactions. So several months later, you have this other incident that's alleged. Again, we sharply dispute that. But even so, it's really not relevant to anything. As you all know, I just tried to establish that it was relevant to knowledge, which is acknowledged 404B. Under 404B, that is one of the potential criteria. But I don't quite understand what Mr. Simonelli means by knowledge. I was sort of left nonplussed by that claim that this somehow showed knowledge. Well, Roberts interfered with me and touched me and punished me on the 21st of October because he knew that I had interacted with him physically in the past. Maybe he was trying to prohibit me from touching the court reporter or whatever. Well, it's always the bailiff's role, as any jurist knows, to maintain order in the courtroom. Had this occurred as alleged, which it didn't, Deputy Roberts potentially would have been within his rights to prevent a litigant from distracting or interfering with the court reporter while the court was in session. Is there a harmless error analysis for the exclusion of the October 21st behavior? Well, it's certainly harmless error. Obviously, any decision, you know, aside from 404B, 403 always is to be considered. Cases like Duran versus City of Maywood stand for that proposition, that even if you check all the boxes, all the four criterion from Rule 404B, the court is still within its discretion to exclude that evidence under 403. If it's like substantially, if the probative value is substantially overcome by bias prejudice, is waste of time a consideration? Certainly that was a consideration for the court. The idea articulated in Duran that it would require a trial within a trial because, as I've stated several times, the facts are in dispute. We would have had to call an entirely new set of witnesses. In fact, other than the judge and possibly the clerk, you know, it was a different court reporter on October 21st than it was on April 8th. It would have been different lawyer witnesses. You know, I know the investigation is an issue in this case, and I conducted a lot of that investigation. I attempted to speak with every attorney and every member of the court staff in court on April 8th and October 21st, and we would have had another full-blown trial on what happened on October 21st, months and months after the district court determined that nothing that happened on October 21st was actionable. So certainly that would be a waste of time and could mislead the jury and cloud the issues. Unless the panel has further questions for me, I'll submit. It appears not. Thank you, counsel. Thank you, Your Honor. Rebuttal. Yes, Your Honor. First, with respect to the question of use of force, I direct the court to the case PB v. Coach, K.O.C.H. 96 F. 3rd, 1298, on page 24 of our opening brief, where the court says where there is no need for force, defendant's use of force is objectively unreasonable. So it seems to me that that's the point that we were trying to make on that. With regard to the October 21st, I want to emphasize two points. First, that the court erroneously excluded, we believe, prevented us from pursuing our First Amendment right to attend, and it's obviously relevant. That issue is obviously relevant to that issue in terms of exclusion from the courtroom. What specifically did Deputy Robert Sayre do to cause Mr. Simonelli to believe he was prohibited from entering the courtroom at all instead of just being subject to the same rules of decorum of all courtroom visitors? On April 8th, he was taken out of the courtroom, and another deputy was called for the obvious purpose of keeping him there. The second deputy knew that because he instructed Mr. Simonelli to stay in the hallway  Secondly, on the 21st, Deputy Roberts escorted Mr. Simonelli out of the courtroom. I think that that's a pretty clear indication that he is not allowed to be there. Well, did Deputy Roberts say, be out of town by sundown and we see your face no more? Or did he just say that, I mean, is there any, you know, obviously if you cause a kerfuffle, you get removed. But what did he say that would lead him to believe he was forever banned from returning? I think, well, first of all, he was certainly banned from keeping and being in that courtroom that day, and he was told to put his questions in writing. So that again suggests that Roberts was intending some sort of ejection from the courtroom for some form of improper conduct that Roberts again says never happened, which of course gets to one of the final points, if I have a few seconds, is the refusal to allow us to cross-examine Deputy Roberts on their information and belief denials. I believe was a critical, we've made a point in our brief, and I believe was still a very important point on a case of credibility that we were not allowed to point out that he made information and belief denials in his answer as to the allegations of touching, where Roberts had to have known whether or not this occurred at the time he answered. And the exclusion of that evidence where the case turned on credibility was extremely important. The second point on the October 21st incident, again, a second incident of touching is more appropriate that touching occurred on both incidents. Well, does it matter that there were intervening dates when there was no altercation or interaction? I think that that's just an issue that goes to the jury. If they want to make that argument, they can make their argument to the jury. What about the circumstance that the facts were disputed on the second event? Well, Your Honor, again, the refusal to dispute a fact goes to the jury. Wouldn't that be a trial within a trial? Huh? Wouldn't that necessitate a trial within a trial? No, because it's all involving the same people. It's not like a separate incident involving a different set of people. It's involving the two actors in the first incident and the same two actors in the second incident. But there would be witnesses that were neither one of those people, so that would— Well, but if we brought two cases, you know, one on Monday, one on Friday, for each of the incidents, would that make it somehow— Well, but you did. Would you say the second case gets tossed because it's going to require different witnesses in the first case? No, because they're both seminal to the cases at that point. This is not seminal to the case. That's the whole point, that it's not a part of the case. Well, it is part of the case in the exclusion, on the First Amendment exclusion issue, but it is also a part of a pattern and practice of use of force against Mr. Simonelli by Deputy Roberts. What's the standard of review? Is it abuse of discretion when you exclude evidence and you weigh the facts? You weigh the factors and decide, would it be more confusing, would it be more distracting or whatever? So we have to look at it through that lens. I don't think section 403 applies because I don't believe this is a case where it is so extraneous to the interactions that you would apply a 403 analysis because that would mean— Well, the district court could have thought that, though. Well, I think it was abuse of discretion to apply a 403 analysis because these are events involving the same parties. If it is involving different parties or other events, then I could understand that. But where credibility is at issue and the parties have a pattern of interaction, I don't believe you can use 403 to limit that in that way. I believe that is abuse of discretion. Is it a pattern if there are intermittent non-events in between? I think that becomes a question of explanation. And the fact that they had dismissed the initial government claim, he had filed the government claim, that had been denied, and then the incident on October 21st happened, I think that that would be our argument that he felt emboldened. So that would be our position. All right. Thank you, counsel. Thank you both, counsel. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned.
judges: Rawlinson, Callahan, S.murphyiii